**In re PII, INC., Debtor.**

**Christopher J. Redmond, Trustee, Plaintiff,**

v.

**Diversified Technologies, Inc., Defendant.**

**Bankruptcy No. 97–20560–7. Adversary No. 99–6014.**

United States Bankruptcy Court, D. Kansas.

June 23, 2003.

M. Elizabeth Fast, Kansas City, MO, Lawrence J. Zimmerman, Leawood, KS, for defendant.

Christopher J. Redmond, pro se.

Marcus A. Helt, Husch & Eppenberger, LLC, Kansas City, MO, for Christopher J. Redmond.

### MEMORANDUM OPINION AND ORDER [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Chapter 7 trustee's complaint seeks to avoid an alleged preferential transfer in the form of a state court garnishment order directed to First National Bank of Kansas, at which the debtor, PII, Inc., held an account. The problem is complicated by an earlier garnishment order against the same garnishee that remains unresolved in state court.

The question presented is whether the second garnishment is a transfer under § 547. The answer is no. The propriety of the first garnishment has never been decided by the state court, which has jurisdiction over the issue. Until the state

---

1. The plaintiff/trustee, Christopher J. Redmond, appears on his own behalf and by his attorney, Marcus A. Helt of Husch & Eppenberger, L.L.C., Kansas City, Missouri. The defendant, Diversified Technologies, Inc., appears by its attorney, Lawrence J. Zimmerman, Leawood, Kansas.

court rules on whether the first garnishment constituted a valid lien on PII, Inc.'s account, this court cannot determine whether PII, Inc., held an interest in the account to which the second garnishment lien could attach and become a preferential transfer.

Summarized, the relevant events are as follows: The garnishor, Diversified Technologies, Inc., obtained a judgment on a counterclaim in Alabama state court against Purification Industries, Inc., and registered the judgment in Kansas. In 1996, Diversified caused a garnishment order to issue on the registered judgment against Purification Industries directed to First National Bank of Kansas. The Bank's answer to the garnishment order indicated that it had suspended $15,338.42 from an account in the name of PII, Inc., the debtor in this case. The account holder, PII, Inc., closed the account and intervened in the state court case, charging wrongful garnishment.

Diversified then sued PII, Inc., and Purification Industries, Inc., in a separate state court suit. This suit claimed that PII, Inc., and Purification Industries, Inc., are affiliated by common officers and directors; that they had caused assets of Purification to be transferred to PII, Inc., to hinder creditors of Purification Industries; and that the PII, Inc., bank account at First National Bank of Kansas was in reality that of the judgment debtor, Purification Industries.

Diversified obtained a pre-judgment attachment order in this second suit, then caused a second garnishment order to issue to First National Bank of Kansas in 1997. The Bank answered this second garnishment order by stating that it had suspended the money in the PII, Inc., account in response to the first garnishment and that PII, Inc., had closed the account.

After PII, Inc., filed this Chapter 7 bankruptcy on March 10, 1997, within 90 days of the second garnishment on February 19, 1997, the Chapter 7 trustee filed this adversary against Diversified claiming the second garnishment was a preferential transfer.

### *Pre–Bankruptcy*

#### *The Corporations*

Charles and Barbara Steiner are officers and directors of both Purification Industries, Inc., and PII, Inc. The latter is a Nevada corporation with assigned Taxpayer I.D. No. 93–1189307. PII is represented by Charles R. Wilson. Purification Industries, Inc., is a Missouri corporation with assigned Taxpayer I.D. No. 48–1114057. Diversified Technologies, Inc., is a Tennessee corporation. It is represented by Lawrence J. Zimmerman.

#### *Alabama Suit and Counterclaim*

At least two years before PII filed this bankruptcy case on March 10, 1997, Purification Industries, Inc., sued Diversified Technologies, Inc., in Alabama state court. Diversified Technologies counterclaimed. The Alabama court entered a judgment on the counterclaim against Purification Industries on September 11, 1995, in the amount of $100,000.[2]

One month later, on October 11, 1995, PII, Inc., was incorporated in the State of Nevada. PII then opened bank account no. 70637 at the First National Bank of Kansas using its assigned Taxpayer I.D. No. # 93–1189307.

#### *Judgment Register in Kansas*

On December 4, 1996, Diversified Technologies registered its Alabama judgment

---

**2.** Plaintiff's Trial Exhibit No. 11, Order entered September 11, 1995, in the Circuit Court of Houston County, Alabama, Case No. CV92–618.

against Purification Industries in the District Court of Johnson County, Kansas, and the registered judgment was assigned Case No. 96C15892.[3]

*1996 Garnishment*

That same day, Diversified filed a request for non-wage garnishment on its registered judgment.[4] The request named the First National Bank of Kansas as garnishee and Purification Industries, Inc., as the defendant under the registered judgment in Case No. 96C15892 in the District Court of Johnson County, Kansas, but it incorrectly listed Taxpayer I.D. No. 93–118–9307 belonging to PII, Inc., not the taxpayer identification number of the defendant, Purification Industries, Inc., No. 48–1114057.

When PII opened its account at First National Bank of Kansas, it provided the Bank with a "Secretary's Certificate–Corporate Depository Resolution."[5] This resolution was signed by Charles and Barbara Steiner as the officers of "PII, Inc. D/B/A Purification Industries International," a Nevada corporation, with Taxpayer I.D. No. 93–1189307.

When the garnishment order was served on December 4, 1996, personnel at First National Bank of Kansas suspended the $15,338.42 in the account. Perhaps they felt justified in doing so because the taxpayer identification number on the garnishment request matched the taxpayer identification number on PII's account and the d/b/a name, Purification Industries International, as stated in the corporate de-

pository resolution, was very similar to Purification Industries, Inc.

The Bank filed an answer to the garnishment order on December 5.[6] And on December 10, 1996, the Bank's senior vice president, Michele Snyder, wrote to the Johnson County court, informing it that the Bank was confused "as to whether the funds we have held are to be held as the court intended and ask the court to tell us whether to pay these funds via an order to pay or release them back into the account."[7] On January 28, 1997, PII closed the account at First National Bank.

The 1996 garnishment, of course, caused outstanding checks written on the PII account to be dishonored.[8]

*Motion to Intervene*

Upon learning that its bank account had been garnished and checks dishonored, PII's principal, Charles Steiner, moved *pro se* to quash the garnishment. He then hired counsel, Charles Wilson, to represent PII. On behalf of PII, Wilson filed a formal Motion to Intervene in Case No. 96C15892, the Johnson County registered judgment case.

By the time Mr. Wilson had prepared the formal Motion to Intervene, however, Diversified Technologies, Inc., had filed a second lawsuit in the District Court of Johnson County, Kansas. The suit was filed on February 18, 1997, captioned *Diversified Technologies, Inc., Plaintiff, v. Purification Industries, Inc.,* and PII, Inc., d/b/a Purification Industries International, Defendants, Case No. 97C2025.[9]

3. Plaintiff's Trial Exhibit No. 13, Notice of Filing of Foreign Judgment filed December 4, 1996, in the District Court of Johnson County, Kansas, Case No. 96C15892.

4. Plaintiff's Trial Exhibit No. 15.

5. Plaintiff's Trial Exhibit No. 8.

6. Plaintiff's Trial Exhibit No. 17.

7. Plaintiff's Trial Exhibit No. 19.

8. Plaintiff's Trial Exhibit No. 18.

9. Plaintiff's Trial Exhibit No. 27.

The petition alleged: (1) that Charles Steiner and Barbara Steiner were officers and directors of both Purification Industries and PII and were both instrumental in the transfer of the corporate assets of Purification Industries to PII; (2) that PII has continued the business operation of Purification Industries; (3) that the transfer of its assets left Purification Industries incapable of paying its creditors' claims because it was dissolved in either fact or law; (4) that PII is liable to Diversified because corporate assets of Purification Industries, Inc., have been transferred from Purification Industries to PII without adequate consideration in a fraudulent attempt to hinder and delay collection of Diversified's judgment against Purification; and (5) that as a result of this fraudulent transaction, PII is liable to Diversified for the full amount of its Alabama judgment.[10]

*1997 Attachment*

When Diversified Technologies filed its 1997 petition in Case No. 97C2025, it also sought a pre-judgment Order of Attachment by filing an affidavit and posting an attachment bond in the amount of $20,338.42. Since there was no judgment against either Purification Industries or PII in the 1997 lawsuit, using the pre-judgment attachment procedure was a consistent approach.

But the affidavit supporting the Order of Attachment rested primarily on the registered Alabama judgment in the 1996 case. Mirroring the allegations of the petition, the affidavit supporting the Order of Attachment asserted that PII is liable to Diversified Technologies for the amount of the Alabama judgment because PII is a successor corporation to and "indistinguishable from Purification Industries, Inc."[11] It further alleged that Purification Industries had concealed, removed, and otherwise disposed of its funds so as to hinder Diversified Technologies from obtaining the funds through garnishment.[12] Thus, Diversified Industries sought to use the Kansas pre-judgment attachment procedure in Case No. 97C2025, in which no judgment had been entered, to enforce a judgment registered in the 1996 case.

Nevertheless, at the plaintiff's request, the state court issued an Order of Attachment on February 19, 1997, in Case No. 97C2025 directed to the Sheriff of Johnson County to attach the real and personal property of · Purification Industries and PII.[13] The Order recited that the attachment was sought to satisfy Diversified Technologies' $100,000 judgment, the one previously registered in Case No. 96C15892.

*1997 Garnishment*

Next, Diversified requested and obtained a second garnishment order. Presumably this second garnishment order was founded on the pre-judgment Order of Attachment, which referenced a $100,000 judgment (presumably the registered Alabama judgment in the 1996 case). This garnishment order was again directed to the First National Bank of Kansas. It was served on the Bank on February 19, 1997, naming PII, Inc., and Purification Industries, Inc., as defendants in Case No. 97C2025.[14]

The Bank answered the garnishment order, stating that it no longer held any funds titled in PII, Inc.'s name because

---

**10.** Plaintiff's Trial Exhibit No. 27, ¶¶ 6–9 at 2–3.

**11.** Plaintiff's Trial Exhibit No. 22, ¶ 3 at 2.

**12.** *Id.* ¶ 6.

**13.** Plaintiff's Trial Exhibit No. 23.

**14.** Plaintiff's Trial Exhibit No. 25.

that $15,338.42 had been suspended and the account closed in response to the December 4, 1996, garnishment.

*PII's Brief in Support of Motion to Intervene*

When Mr. Wilson filed PII's Motion to Intervene in Case No. 96C15892, he also filed a brief in support.[15] In the brief, he addressed the allegations set forth in Diversified's petition against both Purification Industries, Inc., and PII, Inc. d/b/a Purification Industries International. In summary, he argued (1) that the 1996 garnishment was faulty because the account belonged to PII, Inc., not Purification Industries, Inc.; (2) that Diversified Technologies, Inc., held no judgment against PII, Inc.; (3) that no lien could attach from garnishment until there was an adjudication that Purification Industries, Inc., held a beneficial interest in the account; (4) that the proceeding was not one to trace assets, but was rather a garnishment to be conducted strictly according to the statute on that subject; (5) that the pre-judgment procedure was improper; and (6) that the garnishment was premature because there had been no judicial determination piercing the corporate veil between the two corporations.

*Status of State Court Suits*

Happily, the unorthodox procedure outlined above will not need to be unraveled here because according to the docket sheets of the District Court of Johnson County,[16] the two cases have been consolidated in that court.

*Post Bankruptcy*

*Adversary Complaint Filed*

PII filed a Chapter 7 petition on March 10, 1997. Ultimately, the Chapter 7 trustee, Christopher J. Redmond, filed a three-count adversary complaint against Diversified Technologies, Inc., and First National Bank of Kansas.

Count I alleged that Diversified Technologies had received a preferential transfer under 11 U.S.C. § 547. Count II sought turnover of funds in the hands of First National Bank of Kansas, a garnishee. Count III charged wrongful garnishment against Diversified Technologies, Inc., and sought actual, consequential, and punitive damages.

*First National Bank of Kansas Dismissed*

Count II seeking turnover from First National Bank of Kansas has been dismissed from the adversary proceeding with prejudice. The parties agreed to an order compelling First National Bank of Kansas to turn over the funds at issue to the trustee, to be kept "separate from the bankruptcy estate ... until such time as the Court determines whether the Funds are bankruptcy estate property."[17] There is nothing to indicate that the District Court of Johnson County, the court with primary jurisdiction over the garnishment proceeding, was consulted concerning this agreement or consented to the funds being placed with the trustee rather than the state court clerk.

*Motion for Summary Judgment*

The trustee filed a motion for partial summary judgment on Count I of the com-

---

15. Although this document was presented as Plaintiff's Trial Exhibit No. 31, it was not offered nor received into evidence at trial. Nevertheless, the court takes judicial notice of the document, which is attached as Exhibit 17 to the Trustee's Memorandum in Support of His Motion for Partial Summary Judgment filed September 6, 2002 (Doc. # 50).

16. Plaintiff's Trial Exhibit Nos. 34 and 35.

17. Agreed Order Compelling First National Bank of Kansas to Turn Over Funds to Trustee filed June 11, 1999 (Doc. # 17) at unnumbered 2.

plaint.[18] The motion sought to have the garnishment against First National Bank of Kansas declared a preferential transfer of bank account funds allegedly belonging to PII, Inc. After considering the motion, the court issued an order denying the trustee's motion for partial summary judgment on Count I.[19] In that order, the court concluded that partial summary judgment was inappropriate because "questions of fact remain[ed] as to several elements of the trustee's § 547 claim, including whether there was a transfer resulting from a second garnishment order, [and] whether any transfer occurred within 90 days before the debtor filed bankruptcy...."[20]

In addition, the court raised several concerns about the posture of the adversary proceeding and scheduled a status conference to discuss those issues, namely: "whether the trustee is asserting a 'wrongful garnishment' cause of action for damages over which this court may have no jurisdiction; [and] whether a state court determination of the 1996 garnishment may be required before this court can determine whether the 1997 pre-judgment attachment is a preferential transfer...."[21]

*Status Conference*

On February 6, 2003, this court held a status conference at which time it expressed the concerns mentioned in its order disposing of the motion for partial summary judgment. The court had difficulty seeing how it could determine whether the 1997 attachment (garnishment) was a preferential transfer absent a ruling by the state court on the effect of the 1996 garnishment on the parties' rights to the $15,338.42 account balance in suspension.

Nevertheless, counsel for the parties wished to proceed to trial and agreed to limit it to Count I of the complaint (the preferential transfer issue under § 547). Counsel prepared order memorializing their agreement, which the court ultimately signed and filed on March 19, 2003.[22] The order stated in part: "[I]n accordance with the Court's decision at the Status Conference held on February 6, 2003, the referenced evidentiary trial shall be limited to the issue raised in Count I of the Complaint, i.e., whether, on or about February 19, 1997, there was an avoidable transfer under 11 U.S.C. § 547. The Court has yet to decide whether it has jurisdiction over the trustee's other claims [the wrongful garnishment cause of action alleged in Count III]."[23]

*Trial*

On March 20, 2003, the court conducted an evidentiary trial on Count I of the trustee's complaint. Count I of the trustee's adversary complaint alleges that the "prejudgment attachment" in 1997 was served and filed within 90 days of the filing of PII's bankruptcy petition and is an avoidable preferential transfer under 11 U.S.C. § 547(b).

The evidence presented was essentially a more detailed development of the factual statement above. The only witness called by the trustee was Michele Snyder, Vice–President of First National Bank of Kansas.

18. Trustee's Motion for Partial Summary Judgment filed September 6, 2002 (Doc. # 49).

19. Order Denying Motion for Partial Summary Judgment filed November 27, 2002 (Doc. # 59).

20. *Id.* at 2.

21. *Id.* at 3.

22. Amendment to Order for Evidentiary Trial filed March 19, 2003 (Doc. # 71).

23. *Id.*

In advance of trial, the parties submitted trial briefs.[24] At the close of evidence, Diversified Technologies submitted a brief entitled "Motion for Judgment at the Close of Plaintiff's Evidence or at the Close of All the Evidence."[25] The court took both Count I of the complaint and the motion for judgment under advisement.

*Ruling*

■ As a predicate to a ruling that the 1997 garnishment was a preferential transfer under § 547, the trustee wants the court to decide the wrongfulness of the 1996 garnishment. In his post-trial brief, the trustee asserts that the first garnishment is "legally defective" or "invalid and void" because the judgment debtor, Purification Industries, Inc., did not have an ownership interest in the property garnished.

Diversified Technologies asserts that the trustee is unable to prove several of the elements of a § 547(b) preferential transfer claim. Specifically, Diversified Technologies contends that no "transfer" occurred on February 19, 1997, and that the second garnishment order did not involve "an interest of the debtor in property."

Diversified Technologies argues that it perfected its interest in the funds in PII, Inc.'s bank account as a result of serving the first garnishment order on December 4, 1996, which occurred 96 days before the filing of the bankruptcy petition. Therefore, it argues, under 11 U.S.C. § 547(e)(1)(B), the transfer of debtor's interest in the $15,338.42 occurred on December 4, 1996. Consequently, it posits, "Neither Garnishment Order 2, nor the

judicial lien of any creditor on a simple contract could displace the lien created by Garnishment Order 1."[26]

It also contends that the second garnishment order was ineffective because PII, Inc., closed the account on January 28, 1997. It points out that the Bank could not charge a closed account or previously garnished account and in fact withheld no funds in response to the second garnishment order.

Finally, Diversified Technologies maintains that the second garnishment order did not involve "an interest of the debtor in property," because on February 19, 1997, there was no longer an account relative to which the second garnishment could be perfected. It argues that on February 19, 1997, the debtor could not own, use, possess, or enjoy the $15,338.42 previously held in debtor's account because the account had been closed and the funds were being held pursuant to Diversified Technologies' perfected interest. It asserts that an unperfected lien cannot give a creditor an interest in the debtor's property.

■ Although the trustee seems to think so, these issues are not questions determinable in a bankruptcy preference action. They are questions for the state court to decide in resolving the wrongful garnishment case, over which it clearly has jurisdiction, while this court does not. Under the doctrine of *custodia legis*, the District Court of Johnson County has jurisdiction over the garnishment proceeding

24. Plaintiff Trustee's Amended Trial Brief filed March 17, 2003 (Doc. # 67), and Preference Trial Brief of Defendant Diversified Technologies, Inc.'s [sic] filed March 17, 2003 (Doc. # 69).

25. Doc. # 74. The trustee filed a response on March 27, 2003 (Doc. # 76), and Diversified

Technologies filed a reply on April 2, 2003 (Doc. # 77).

26. Preference Trial Brief of Defendant Diversified Technologies, Inc.'s [sic] filed March 17, 2003 (Doc. # 69) at 4.

initiated there before this bankruptcy case was filed.

The trustee's adversary complaint in this case seeks damages for wrongful garnishment and necessarily asks for a determination of the ownership of the $15,338.42 suspended from the debtor's bank account by the 1996 garnishment. The state court will decide to whom the bank account belonged when the 1996 garnishment was served on the Bank and whether the garnishment lien attached. If the state court decides the garnishment was wrongful, presumably it will say that the account belonged to PII, Inc., no garnishment lien attached, and the suspended funds belong to PII, Inc. If so, those funds will come into the bankruptcy estate as property of the debtor, mooting the trustee's preference action.

If the state court decides the garnishment was not wrongful, it will presumably find merit in Diversified's fraud and collusion argument and rule that the account was properly garnished because it was the property of Purification Industries, Inc.

After carefully reviewing all the pre- and post-trial briefing of counsel in light of the arguments and evidence presented at the March 20 hearing, the court is convinced that a state court determination of whether the 1996 garnishment was wrongful is required before this court can determine whether the 1997 garnishment constitutes a preferential transfer.

IT IS THEREFORE ORDERED THAT the trustee's Count I prayer to avoid a preferential transfer is denied without prejudice until the state court determines the wrongful garnishment issue raised by PII's intervention in Case No. 96C15892, which has been consolidated with Case No. 97C2025 in the District Court of Johnson, County, Kansas. Stay relief is granted to permit that issue to be litigated in the state court.

IT IS FURTHER ORDERED THAT a decision on the trustee's adversary complaint and a decision on Diversified Technologies' Motion for Judgment at the Close of Plaintiff's Evidence are denied pending a state court decision on the wrongful garnishment issue presently before it.